UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *ex rel.* VERITY INVESTIGATIONS, LLC, <br><br> *Plaintiff/Relator*, <br><br> v. <br><br> QP HOLDINGS, LLC, <br><br> RIVER BEND INDUSTRIES LLC, <br><br> MASTER MOLDED PRODUCTS, LLC, <br><br> *Defendants.* | Case No. _____ <br><br> **ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729** *et seq.* <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **DO NOT PLACE IN PRESS BOX** <br><br> **Jury Trial Demanded** |

1

## *QUI TAM* COMPLAINT

**I.   INTRODUCTION**

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover $3.1 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of federal guaranteed loans by falsely certifying that they and their affiliates had fewer than 300 employees. Those loans were later forgiven, and the federal government paid the bill.

2. The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves false applications for Second Draw PPP loans.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5. Defendants QP Holdings, LLC, River Bend Industries, LLC, and Master Molded Products, LLC falsely certified to the SBA that they had 252, 100, and 16 employees, respectively.

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.
[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

2

As a direct result of those false statements, Defendants obtained Second Draw PPP loans totaling $3.1 million, which were later forgiven.

6. Relator is an outside investigative company that detected Defendants' fraud by reviewing the Forms 5500 that Defendants' employees' 401(k) plan filed with the Department of Labor. Those forms indicated that the 401(k) plan had more than 300 "active participants" in each of 2019, 2020, and 2021. Because an "active participant" is an employee, these forms' representations to the Department of Labor give the lie to Defendants' false statements to the SBA that they and their affiliates employed fewer than 300 persons.

## II. THE PARTIES

7. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant QP Holdings, LLC ("QP Holdings") is a Massachusetts limited liability company with its principal place of business in Wakefield, Massachusetts.

9. Defendant River Bend Industries, LLC ("River Bend") is a Michigan limited liability company with its principal place of business in Okemos, Michigan.

10. Defendant Master Molded Products, LLC ("Master Molded") is a Michigan limited liability company with its principal place of business in Okemos, Michigan.

## III. JURISDICTION AND VENUE

11. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

12. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

13. Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendant QP Holdings is "found" in this District. 31 U.S.C. § 3732(a).

IV.   THE FALSE CLAIMS ACT

14. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

15. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

16. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

17. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

19. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

20. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

21. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

22. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

23. The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

24. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

25. As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

26. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loans are guaranteed by the federal government and the federal government later repays the lenders. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

V.   NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

27. On information and belief, no "public disclosure" has been made of Defendants' false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

5

28. On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

29. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

30. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendants' employees' Form 5500 disclosures and other statements, and (b) Defendants' false certification for the Second Draw PPP loan.

31. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

32. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

33.    The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

34.    The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

35.    The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

36.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[8]

37.    That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[9]

38.    That regulation defined affiliation broadly:

a.    Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief

---

[4] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).
[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

7

Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

      b.      Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

      c.      Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

      d.      Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

---

[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[11] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[12] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[13] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

e. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

39. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

40. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

41. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

42. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

43. The SBA guaranteed 100% of the outstanding balance of Defendants' Second Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

---

[14] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

VII. **DEFENDANTS FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS**

A. **BACKGROUND**

44. Upon information and belief, Defendant QP Holdings, LLC ("QP Holdings") is a limited liability company registered in Massachusetts[15] and headquartered at 649 Main Street, Wakefield, MA 01880.[16]

45. QP Holdings can be validly served with process at 649 Main Street, Wakefield, MA 01880.[17]

46. Upon information and belief, Defendant River Bend Industries, LLC ("River Bend") is a limited liability company registered in Michigan[18] and 2135 B Avenue Victor, Iowa 52347.[19]

47. River Bend can be validly served with process at 2222 W. Grand River Ave, Suite A, Okemos, MI 48864.[20]

48. Upon information and belief, Defendant Master Molded Products, LLC ("Master Molded") is a limited liability company registered in Michigan[21] and headquartered at 1000 Davis Road, Elgin, Illinois 60123.[22]

49. Master Molded can be validly served with process at 2222 W. Grand River Ave, Suite A, Okemos, MI 48864.[23]

---

[15] Massachusetts, Secretary of State, QP Holdings (for ID No. 001072965).
[16] Massachusetts, Secretary of State, QP Holdings (for ID No. 001072965).
[17] Massachusetts, Secretary of State, QP Holdings (for ID No. 001072965).
[18] Michigan, Secretary of State, River Bend (for ID No. 801822586).
[19] Quantum Plastics, https://quantumplastics.com/about-us/our-divisions/victor/.
[20] Michigan, Secretary of State, River Bend (for ID No. 801822586).
[21] Michigan, Secretary of State, Master Molded (for ID No. 801772268).
[22] LinkedIn, Master Molded Products LLC, https://www.linkedin.com/company/master-molded-products-corp-/about/
[23] Michigan, Secretary of State, Master Molded (for ID No. 801772268).

50. QP Holdings is a global supplier in the automotive industry, specializing in custom injection molding with tight tolerances and complex geometries. It has 230 molding presses and 5 manufacturing locations.[24]

51. On information and belief, QP Holdings does business as Quantum Products.

52. QP Holdings' domestic and foreign affiliates include River Bend, Master Molded, and Plastico Promex USA, LLC.

53. River Bend is among the largest custom molders of thermoplastics and engineering resins. It operates in Victor, Iowa and Ft. Smith, Arkansas.[25]

54. QP Holdings acquired River Bend in 2015.[26]

55. Master Molded is a custom plastic injection molding company with a 110,000 square foot production facility in Elgin, Illinois.[27]

56. QP Holdings acquired Master Molded in 2014.[28]

57. Plastico Promex USA, LLC produces injection molding plastic parts, operating in El Paso, Texas with a wholly-owned maquiladora in Juarez, Mexico.[29]

58. QP Holdings acquired Plastico Promex USA, LLC in 2016.[30]

59. On information and belief, the QP Holdings affiliates named in the foregoing paragraphs qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

---

[24] Quantum Plastics, Home, https://quantumplastics.com.
[25] Quantum Plastics, History, https://quantumplastics.com/history/.
[26] Quantum Plastics, History, https://quantumplastics.com/history/.
[27] Quantum Plastics, History, https://quantumplastics.com/history/.
[28] Quantum Plastics, History, https://quantumplastics.com/history/.
[29] Quantum Plastics, History, https://quantumplastics.com/history/.
[30] Quantum Plastics, History, https://quantumplastics.com/history/.

### B. QP Holdings' False Statement to Obtain Second Draw PPP Loan

60. In 2020, QP Holdings submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $231,102.50.

61. On or about March 31, 2021, the U.S. government forgave 100% of QP Holdings' First Draw PPP loan, including interest, in the amount of $232,572.57.

62. In 2021, QP Holdings applied for a Second Draw PPP loan.

63. QP Holdings submitted its Borrower Application form, SBA Form 2483-SD, to United Bank in Atmore, Atlanta.

64. On its Form 2483-SD, QP Holdings listed its address as 649 Main St, Wakefield, MA 01880-5203.

65. On its SBA Form 2483-SD, QP Holdings represented that it and its affiliates had 16 employees—under the 300-employee limit needed to be eligible to apply.

66. QP Holdings' SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. QP Holdings and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

67. QP Holdings deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. QP Holdings signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

68. On or about March 9, 2021, QP Holdings was approved for a Second Draw PPP loan in the amount of $231,102.50 by lender United Bank.

69. The U.S. government paid lender United Bank a lender's processing fee of 5% of the $231,102.50 loan, in the amount of $11,555.13.[31]

70. On or about August 27, 2021, the U.S. government forgave 100% of QP Holdings' Second Draw PPP loan, including interest, in the amount of $232,180.98.

### C.    RIVER BEND'S FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN

71. In 2020, River Bend submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $2,327,589.78.

72. On or about June 14, 2021, the U.S. government forgave 100% of River Bend's First Draw PPP loan, including interest, in the amount of $2,353,607.77.

73. In 2021, River Bend applied for a Second Draw PPP loan.

74. River Bend submitted its Borrower Application form, SBA Form 2483-SD, to Huntington National Bank in Columbus, Ohio.

75. On its Form 2483-SD, River Bend listed its address as 2135 B Ave, Victor, IA 52347-8512.

76. On its SBA Form 2483-SD, River Bend represented that it and its affiliates had 252 employees—under the 300-employee limit needed to be eligible to apply.

77. River Bend's SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. River Bend and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

78. River Bend deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw

---

[31] Paycheck Protection Program (PPP) Information Sheet: Lenders,
https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

PPP loan. River Bend signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

79. On or about February 17, 2021, River Bend was approved for a Second Draw PPP loan in the amount of $2,000,000.00 by lender Huntington National Bank.

80. The U.S. government paid lender Huntington National Bank a lender's processing fee of 1% of the $2,000,000.00 loan, in the amount of $20,000.00.[32]

81. On or about July 9, 2021, the U.S. government forgave 100% of River Bend's Second Draw PPP loan, including interest, in the amount of $2,007,452.05.

D. **MASTER MOLDED'S FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN**

82. In 2020, Master Molded submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $1,078,900.00.

83. On or about November 25, 2020, the U.S. government forgave 100% of Master Molded's First Draw PPP loan, including interest, in the amount of $1,085,077.81.

84. In 2021, Master Molded applied for a Second Draw PPP loan.

85. Master Molded submitted its Borrower Application form, SBA Form 2483-SD, to Huntington National Bank in Columbus, Ohio.

86. On its Form 2483-SD, Master Molded listed its address as 1000 Davis Rd, Elgin, IL 60123-1314.

87. On its SBA Form 2483-SD, Master Molded represented that it and its affiliates had 100 employees—under the 300-employee limit needed to be eligible to apply.

---

[32] Paycheck Protection Program (PPP) Information Sheet: Lenders,
   https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

88. Master Molded's SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. Master Molded and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

89. Master Molded deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Master Molded signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

90. On or about February 24, 2021, Master Molded was approved for a Second Draw PPP loan in the amount of $886,520.00 by lender Huntington National Bank.

91. The U.S. government paid lender Huntington National Bank a lender's processing fee of 3% of the $886,520.00 loan, in the amount of $26,595.60.[33]

92. On or about August 25, 2021, the U.S. government forgave 100% of Master Molded's Second Draw PPP loan, including interest, in the amount of $890,624.71.

E.  **EVIDENCE OF MORE THAN 300 EMPLOYEES**

93. QP Holdings maintained a 401(k) retirement plan for its employees (the "QP Holdings Employee Benefits Plan").

94. The QP Holdings Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer and its affiliates.[34] The QP Holdings Employee Benefits Plan covered employees of QP Holdings, River Bend, and MasterMolded.[35]

---

[33] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[34] The plan's Forms 5500 for 2019, 2020, and 2021 check the box in section A attesting that it was "a single-employer plan."

[35] Form 5500, Notes on Financial Statements at 8 (2021) (covering "all active employees of QP Holdings, LLC, a holding company for related Employers. As of December 31, 2021 and 2020, Employers include Master Molded

15

95. In 2019, 2020, and 2021, the QP Holdings Employee Benefits Plan had the following legal name: Quantum Plastics 401(k) Plan.

96. Each year, the QP Holdings Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the QP Holdings Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed Defendants that "active participants" are "individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[36]

97. In 2019, the QP Holdings Employee Benefits Plan reported 515 active participants at the start and 493 active participants at the end of the year.[37]

98. In 2020, the QP Holdings Employee Benefits Plan reported 480 active participants at the start and 425 active participants at the end of the year.[38]

99. In 2021, the QP Holdings Employee Benefits Plan reported 407 active participants at the start and 373 active participants at the end of the year.[39]

100. Upon information and belief, the "active participants" listed in QP Holdings' Forms 5500 was significantly less than QP Holdings and its affiliates' true numbers of domestic and foreign employees.

101. The number of "active participants" reported in the QP Holdings Employee Benefits Plan excluded multiple categories of employees, such as those who are not "age 21 or

---

Products, LLC, River Industries, LLC, Plastico Promex USA, LLC, 3D Plastics, LLC, RPP Acquisitions, LLC, Powermark International, LLC, and Quantum Ammunition, LLC").

[36] Instructions for Form 5500.
[37] Form 5500 (2019).
[38] Form 5500 (2020).
[39] Form 5500 (2021).

older and have completed 3 months of service" and expressly "does not cover union, nonresident aliens, interns, part-time, seasonal or temporary employees."[40]

102. Upon information and belief, foreign employees are typically not eligible to participate in U.S. 401(k) plans under the terms of those plans.

103. Upon information and belief, the number of "active participants" reported in the QP Holdings Employee Benefits Plan excluded the total number of employees of QP Holdings' foreign affiliates, such as the employees of Plastico Promex USA, LLC in Mexico.

104. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

105. On information and belief, Defendants' payroll records from 2019, 2020, and 2021 will confirm what Defendants always knew—that they and their affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

**Submitting False Claims for Payment**
**31 U.S.C. § 3729(a)(1)(A)**

106. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

107. Defendants violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lenders claims for approval of Second Draw PPP loans.

108. Defendants' knowingly false claims on their SBA Forms 2483-SD were material to the lenders' decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive those loans and repay the lenders.

---

[40] Form 5500, Notes on Financial Statements at 6 (2019).

109. But for Defendants' knowingly false claims, the lenders would not have issued the loans and the SBA would not have forgiven them.

110. The Second Draw PPP loans that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

111. The Second Draw PPP loans that Defendants obtained was money that the Government effectively and in practice provided to the lenders, by means of the Government's 100% guarantee to the lenders of repayment by the Government in the case of default by the borrower.

112. The Government later reimbursed the lenders 100% of the amount of Defendants' Second Draw PPP loans, with interest.

## SECOND CAUSE OF ACTION

**Creating a False Record or Statement Material to a False Claim**
**31 U.S.C. § 3729(a)(1)(B)**

113. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

114. Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, their SBA Forms 2483-SD and their included certifications—to support false claims submitted to the lenders for approval of Second Draw PPP loans.

115. Defendants' knowingly false records and statements were material to the lenders' decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive those loans and repay the lenders.

116. But for Defendants' knowingly false records and statements, the lenders would not have issued the loans and the SBA would not have forgiven them.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: August 13, 2024              Respectfully submitted,

*/s/ Raymond P. Ausrotas*

Raymond Ausrotas (BBO# 640315)
**ARROWOOD LLP**
10 Post Office Square, 7th Floor South
Boston, MA 02109
T: (617) 849-6212/F: (617) 849-6201
RAusrotas@arrowoodllp.com

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*